er's charge sufficiently alleged the lesser-included OVUII offense. 126 Hawai'i at 76, 266 P.3d at 1130.

I recognize that there is a potential distinction between this case and *Tominiko*, in that Walker did challenge the sufficiency of his HOVUII charge at the circuit court on the ground that it failed to allege he had three prior OVUII convictions within ten years of the present offense, while Tominiko did not raise any challenge to the sufficiency of the charge against him. *Id.* at 72, 266 P.3d at 1126. However, I believe that in challenging the sufficiency of a charge, the defendant must be specific in identifying the way in which the charge is defective, so that the court can take appropriate action to address the deficiency. This is the rule that we apply to evidentiary objections, *see* Hawai'i Rules of Evidence Rule 103(a)(1) (requiring that objections must be "specific" and "timely"); *State v. Matias*, 57 Haw. 96, 101, 550 P.2d 900, 904 (1976) (holding that "there can be no doubt that the making of an objection upon a specific ground is a waiver of all other objections") (internal quotation marks and citation omitted), and there is no apparent reason why a different rule should apply to challenges to the sufficiency of an indictment.[3]

Here, Walker made a specific objection to the HOVUII charge based on its failure to allege he had three prior OVUII convictions within 10 years of the present offense. However, Walker did not allege before the circuit court, the Intermediate Court of Appeals (ICA), or this court that the public road requirement was missing from his HOVUII charge or the lesser-included OVUII offense. Accordingly, the *Motta/Wells* liberal con-

struction standard applies here, and under that standard, the charge adequately alleged the lesser-included offense of OVUII. *See Tominiko*, 126 Hawai'i at 76, 266 P.3d at 1130–31.

Nevertheless, the ICA had the discretion to vacate Walker's conviction for HOVUII and remand the case with instructions to dismiss that count without prejudice. *See Wheeler*, 121 Hawai'i at 390, 400, 219 P.3d at 1177, 1187. Since I believe that the ICA properly exercised that discretion, I concur in the result.

273 P.3d 1180

**STATE of Hawai'i, Respondent/Plaintiff-Appellee,**

v.

**Jason KIESE, Petitioner/Defendant-Appellant.**

**No. SCWC–29792.**

Supreme Court of Hawai'i.

March 29, 2012.

---

Taryn R. Tomasa and Kirsha K. M. Durante, Deputy Public Defenders, for petitioner/defendant-appellant.

Stephen Tsushima, Deputy Prosecuting Attorney, for respondent/plaintiff-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA, JJ.

Amended Opinion of the Court by McKENNA, J.[1]

We hold that although the ICA correctly held that there was sufficient evidence to

---

1. The Opinion of the Court originally filed on March 29, 2012, is amended to include the date the Opinion was filed.

sustain Petitioner/Defendant–Appellant Jason Kiese's ("Kiese") harassment conviction, it erred in not addressing the family court's failure to stay Kiese's sentence pending appeal based on the mootness doctrine because the public interest exception to the mootness doctrine applies.

We further hold that Kiese, as a petty misdemeanant on bail, pursuant to Hawai'i Revised Statutes ("HRS") §§ 804–4(a) and (b) (Supp. 2001), *State v. Ortiz*, 74 Haw. 343, 845 P.2d 547 (1993), and *State v. Miller*, 79 Hawai'i 194, 900 P.2d 770 (1995), was entitled to a continuance of bail as a matter of right pending appellate review, and the family court was without jurisdiction to execute Kiese's sentence. The family court therefore erred by denying Kiese a stay of his petty misdemeanor sentence pending appeal.

Kiese's other points are unpersuasive, and we hold that the ICA did not err (1) in concluding that, even if the prosecutor's line of questioning was improper, the family court is presumed to have disregarded it; and (2) by making presumptions about nonresponses on the record to sustain the conviction.

Although we accepted certiorari to address the stay of sentence issue, because we uphold the conviction and because Kiese has already served his probationary sentence, we affirm the ICA's judgment on appeal, which affirmed the family court's judgment of conviction and sentence.

## I. BACKGROUND

Kiese was charged by Complaint with one count of harassment, in violation of HRS § 711–1106(1)(a) (Supp. 2008).[2] The prosecution stemmed from an incident in which Kiese allegedly slapped his six-year-old son ("Minor") in the face once with an open hand and struck him with a thin bamboo rod on the buttocks, arms, and hands multiple times. After a bench trial, the family court found Kiese guilty as charged and denied his motion to stay his sentence pending appeal. The ICA affirmed the judgment of conviction and concluded that the family court's denial

of his stay was erroneous but moot. *State v. Kiese*, No. 29792, 2011 WL 682258 (App. Feb. 25, 2011) (mem.) at 20. What follows is a brief history of this case.

### A. Competency Hearing

Before trial commenced, the Minor was called to the stand to determine whether he was competent to testify. During the competency hearing, the Minor's responses were frequently noted as "not audible" in the trial transcripts. The Minor often gave non-verbal answers to questions posed by the prosecutor and defense counsel, shaking his head, nodding his head, and shrugging his shoulders. The court, prosecutor, and defense counsel interpreted the Minor's gestures for the record, when there was apparently no verbal response or even immediately following a verbal response consistent with the gesture. No objections were raised to the court's, prosecutor's, or defense counsel's interpretations.

After cross-examining the Minor, however, defense counsel challenged the Minor's competency based on these gestures by saying, "Competency, Your Honor, again, goes beyond whether or not the Minor can answer yes or no questions. Sometimes he's shrugging his shoulders. Sometimes he's nodding his head, Your Honor. He has to be able to state in sentences what transpired." The family court responded, "He needs to communicate effectively." Although the family court remarked that the Minor presented a "borderline case," he ultimately found the Minor competent to testify.

The Minor was then administered the oath, with no audible response to the oath registering in the trial transcripts, but with the clerk administering the oath stating, "Okay. Thank you," to the Minor. Defense counsel did not object.

### B. Trial

During the trial itself, the court, prosecutor, and defense counsel continued explaining

---

2. HRS § 711–1106(1)(a) states, as it did at the time of the alleged offense, "A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that

person ... [s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]"

the Minor's gestures for the record. There were no objections as to any interpretation of the Minor's gestures.

Because the Minor was not very verbal, the State elicited some of his testimony as follows, referring to prior conversations among the Minor, prosecutor, and defense counsel:

Q: (By the State): Okay. [Minor], do you remember talking to [defense counsel] and myself earlier today?

A: (By Minor): Not really.

Q: Not really. You don't remember talking to us?

A: (No audible response).

Q: Okay. So you don't remember telling us that Daddy hit you with a stick?

A: (No audible response).

Q: Wait, okay. [Minor], do you remember telling me that Daddy hit you with a stick?

A: (No audible response).

Q: So do you remember?

(By the State): Your Honor, if the record will reflect the witness nodded his head.

THE COURT: Yes.

Q (By the State): Okay. And when you told us that Daddy hit you with the stick, do you remember telling us that Daddy hit you to the face with a stick?

(By Defense Counsel): Objection, Your Honor. Move to strike, hearsay statement, out of court.

(By the State): Your Honor, it's obvious—it's a prior consistent statement. I'm trying to lay the foundation to bring in another witness to—well,—

THE COURT: Objection is sustained. Rephrase.

(By the State): Okay.

THE COURT: Keep it short.

Q (By the State): [Minor], do you remember telling me that Daddy hit you with a stick?

A: (No audible response).

Q: Yes. Okay.

Your Honor, may the record reflect the witness has nodded.

THE COURT: Yes.

Q (By the State): Do you remember telling us that Daddy hit you to the face?

(By Defense Counsel): Objection, Your Honor. Move to strike. Same, hearsay, out-of-court statement.

THE COURT: Overruled.

Let the record reflect the witness was nodding his head up and down.

Q (By the State): Okay. Do you remember telling us that he hit you to the face with a stick?

(By Defense Counsel): Objection, Your Honor. Move to strike.

THE COURT: Overruled.

(By the State): Again, Your Honor, prior consistent statement.

THE COURT: Same grounds.

And the same, the record will reflect that the witness was nodding his head up and down.

Q (By the State): Okay. So right now, when you were sitting there you told us that Daddy hit you with a stick to the arms and to the butt, right?

A: (No audible response).

Q: Okay. Is that a yes?

A: (No audible response).

Q: Yes. Okay.

May the record reflect that the witness has nodded his head.

THE COURT: Yes.

. . . .

Q (By the State): Okay. But do you remember telling [prosecution and defense counsel] earlier that [Kiese] did [hit you with a stick to the face]?

A: (No audible response).[3]

Q: Yes?

A: (No audible response).

---

**3.** The Minor subsequently testified that Kiese did "not really" hit him on the face with a stick, that Kiese "[m]aybe sometimes or not sometimes" hit him on the face with a stick, and that, on the day of the alleged incident he "[did not] know" whether Kiese hit him on the face with a stick. The Minor nodded his head when the prosecutor asked him if he remembered telling the prosecutor and defense counsel that Kiese did strike him on the face with a stick.

By the State: Your Honor, if the record will reflect the witness is nodding his head.

THE COURT: The record will so reflect.

. . . .

Q (By the State): Do you remember telling me earlier that he hit you about two times on the arm?

(By Defense Counsel): I'm going to raise objections, Your Honor. It's an out-of-court statement. It's hearsay.

A: No.

Q (By the State): No, you don't remember saying that?

A: (No audible response).

. . . .

Q (By the State): And how many times did Daddy hit you to the face?

A: Two or one.

Q: Two or one. Okay. Do you remember telling me that it was two to three times—

(By Defense Counsel): Objection, Your Honor. Leading. Witness has answered in court two to one times and it's an out-of-court statement.

THE COURT: Overruled. You'll have your chance.

The Minor further testified that, on the day in question, he misbehaved at school and his father scolded him, hit him on the face, and spanked him four or five times with a small stick on the hands and butt. He also testified that when his father hit him, it hurt, and he cried.

The State then called Honolulu Police Officer Lordy Cullen, who testified that, on the day after the alleged incident, he was called to Minor's school for a physical abuse case, and noticed red marks across the Minor's arm, hand, and face. Photographs of the red marks were entered into evidence. Officer Cullen testified that, when asked, the Minor stated that all of the marks resulted from his father spanking him with a yellow stick.

The State then called Ayako Kiese ("Ayako"), Kiese's wife, who testified that she had told Kiese that the Minor had been "too playful" at school for the three days preceding the incident. She testified that she did not witness the incident because she had come home after it had happened, and the Minor was in his room in a time-out, possibly crying or having finished crying. She testified that she did not see the Minor that night but that the next morning, she saw marks on the Minor's hands. She testified the Minor told her that he got the marks when his father spanked his butt while he tried to cover his butt with his hands. Ayako testified that Kiese later told her that he spanked Minor with a futon stick, which Ayako described as very thin and measuring eighteen to twenty-four inches long.

Kiese decided to testify and was the only defense witness. He testified that the Minor had misbehaved at school in the days before the incident. After the first day of misbehavior, Kiese told the Minor that if he continued misbehaving, Kiese was going to spank him. Kiese stated that he also took away the Minor's X-box, snack, and TV privileges.

Kiese testified that the next day, Ayako told him that the Minor spit in the cafeteria, wrestled with other kids, and was not listening. Kiese testified that, at first, the Minor claimed his friend did all of those things, and that he was disappointed because the Minor was lying. He admitted that he slapped the Minor once on the face, but not hard, "because [Minor is] just a kid," and that the Minor's head moved back a little bit. After the slap, Kiese testified, the Minor told the truth about his behavior in school. Kiese then testified that he told the Minor that he would be punished, first for lying, second for being disrespectful and not following the rules.

Kiese testified that he spanked the Minor five or six times with the futon stick, aiming for his buttocks, but striking the Minor's hands and arms as he blocked the blows. Defense counsel elicited testimony from Kiese that he did not intend to harass the Minor but rather, that the slap and spanks were warranted as discipline.

On cross-examination, Kiese testified that the Minor was six years old and less than four feet tall. The prosecutor also elicited Kiese's admission that he could have disciplined the Minor with open-handed spanks, as he had done before, rather than with a

stick, and the Minor "probably" would have listened to him.

At the conclusion of trial, the family court found Kiese guilty as charged because "the amount of force used was not reasonable, not proportional for the size and age of the child."

## C. Sentencing

Sentencing occurred immediately after conviction. The State recommended probation with parenting classes. Defense counsel agreed, but requested that any sentence be stayed pending Kiese's appeal. The family court imposed a sentence of six months of probation, parenting classes, and fees, but denied Kiese's request for a stay of the sentence pending appeal.

## D. Findings of Fact and Conclusions of Law

The family court subsequently filed its Findings of Fact, Conclusions of Law, and Judgment of Conviction. The only Findings of Fact Kiese challenged before the ICA are the following:

1. On January 29, 2009, [Ayako] was notified by school officials at [Minor's] school that [Minor], who was six years old on the date of the incident, had misbehaved earlier that day, acting in a manner described as being "playful" and not in a dangerous manner.

4. Upon arriving home later that evening, [Ayako] found out that [Minor] was already in a "timeout" and was crying. [Ayako] did not talk to [Minor] nor [Kiese] as to the extent of the interaction between the two that evening and told [Minor] to get ready for bed.

13. For three consecutive days prior to January 29, 2009, [Kiese] and [Ayako] had been informed that [Minor] had been too "playful" and "misbehaved" during school, but none of the reports indicated that [Minor] was a danger to self or others.

16. [Minor] was under four feet tall and based on factfinder's own visual observations, [Minor] was a thin, slight boy and much smaller in comparison to [Kiese].

Kiese also challenged Conclusion of Law Number 5, alleging it was based on erroneous findings of fact. Conclusion of Law Number 5 states:

> Based on the credible evidence presented and the justifiable inferences of fact, this Court finds that [Kiese] is guilty of the offense of Harassment in violation of HRS § 711–1106(1)(a) as the State has proven beyond a reasonable doubt that the force employed by [Kiese] was done **WITHOUT** "due regard for the age and size" of the [Minor].

## E. ICA Appeal

On appeal before the ICA, Kiese raised the following points of error: (1) the family court erred in finding the Minor competent to testify in violation of Rules 603 and 603.1 of the Hawai'i Rules of Evidence; (2) the State failed to adduce sufficient evidence to sustain the conviction; (3) Kiese's right to a fair trial was violated by the prosecutor's misconduct; (4) the family court erred as a matter of law in denying Kiese's request to stay the sentencing pending appeal; and (5) the family court failed to exercise reasonable control over the presentation of evidence.

The ICA issued a memorandum opinion affirming Kiese's judgment of conviction. *See State v. Kiese*, No. 29792, 2011 WL 682258 (App. Feb. 25, 2011) (mem.) The ICA rejected the first three of Kiese's points of error, summarily held that the family court erred as to the fourth point of error but declined to address that point on the merits as moot, and found his fifth point of error meritless. *Kiese*, mem. at 4–20. Kiese timely appealed the ICA's judgment.

## F. Certiorari

In his application for certiorari, Kiese presents the following issues:

1. The ICA gravely erred in holding that there was sufficient evidence to sustain Kiese's conviction of harassment and in using facts not in the record [i.e., Kiese's height and weight] to reach its conclusion.

2. The ICA gravely erred in holding that the prosecutor's line of questioning asserting his personal knowledge did not constitute prosecutorial misconduct.

3. The ICA gravely erred in making presumptions, where the record reflected "no response" to the oath and throughout [Minor's] testimony, to sustain the conviction.

4. The ICA gravely erred in not addressing the family court's error of failing to stay the sentence pending appeal because guidance is necessary for courts.[4]

## II. DISCUSSION

### A. Substantial evidence supports Kiese's conviction for harassment.

Kiese's first challenge is to the sufficiency of the evidence supporting his conviction for harassment. Under HRS § 711–1106(1)(a), the State's burden at trial was to prove beyond a reasonable doubt that Kiese struck, shoved, kicked, or otherwise touched the Minor in an offensive manner (or subjected the Minor to offensive physical contact), with the intent to harass, annoy, or alarm the Minor. The State also had the burden of disproving the parental justification defense raised by Kiese beyond a reasonable doubt.

As a threshold matter, several of the family court's findings of fact were not challenged before the ICA by either the State or Kiese. As such, those facts are binding upon the appellate courts. *See Kelly v. 1250 Oceanside Partners*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006). Specifically, neither the State nor Kiese disputes the family court's findings that Kiese slapped the Minor in the face; struck the Minor more than five times with a bamboo stick with enough force to leave visible welts the next morning; or that photographs taken the day after the alleged incident and entered into evidence depict the red slash marks on Minor's hand and arms and the red slap mark left on Minor's face.

Kiese's challenge to the sufficiency of the evidence, therefore, is not as to whether he made offensive contact with the Minor. Rather, his challenge is to whether those actions were accompanied with the requisite intent to harass, alarm, or annoy the Minor. Assuming intent was proven, Kiese also challenges his conviction on the basis that the State failed to disprove his parental justifica-

tion defense beyond a reasonable doubt. Specifically, Kiese asserts that the State did not disprove beyond a reasonable doubt that the force he employed was with due regard to the Minor's age and size.

 Our review of challenges to the sufficiency of evidence is deferential to the trial court:

> We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

> "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Matavale*, 115 Hawai'i 149, 157–58, 166 P.3d 322, 330–31 (2007) (citation omitted).

 Addressing the issue of intent, we have long held that intent can be proven inferentially:

> The law recognizes the difficulty by which intent is proved in criminal cases. We have consistently held that since intent can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his

---

**4.** The issues underlying the first and fifth points of error before the ICA are not explicitly pursued on certiorari, so they will not be discussed further.

acts, conduct, and inferences fairly drawn from all the circumstances.

*State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted).

■ In this case, although Kiese testified that his overriding intent in striking the Minor was disciplinary, there was substantial evidence at trial supporting the family court's conclusion that Kiese intended to harass, annoy, or alarm the Minor. Although it is undisputed that the Minor's behavior had escalated over the course of three days and that taking away his privileges had not been effective, Kiese testified that a spanking with his hand "probably" would have corrected the misbehavior. Instead, Kiese chose to slap the Minor in the face and strike him with a bamboo stick at least five times with enough force to leave red welts visible the next day. The Minor also testified that the strikes hurt and he cried.

Kiese argues that *State v. Stocker* stands for the proposition that a reasonable inference of intent to convict a parent for harassment can be drawn when it is shown that the parent strikes his child "after becoming angry and 'yelling[.]'" 90 Hawai'i 85, 92, 976 P.2d 399, 406 (1999). Therefore, Kiese argues, because he did not become angry and yell at the Minor, no reasonable inference can be drawn that he possessed the requisite intent. We agree with Kiese's summary of *Stocker,* but we disagree with the conclusion he draws. Instead, we look to Kiese's actions and all of the other surrounding circumstances. Viewed in the light most favorable to the State, substantial evidence supports the reasonable inference that Kiese acted with the requisite intent to harass, annoy, or alarm the Minor. The ICA did not gravely err in so concluding.

Kiese also challenges his conviction on the basis that the State failed to disprove that his conduct was justified as parental discipline. We find his argument unpersuasive. The *Matavale* plurality reaffirmed the well-established principle that a parent's right to direct his or her child's upbringing is "of constitutional dimension." 115 Hawai'i at 158, 166 P.3d at 331 (citation omitted). The state, on the other hand, also possesses an interest in protecting child welfare. *See id.* To strike a balance between the two interests, the legislature created HRS § 703–309 (1993), which stakes out the boundaries of a parent's privilege to exercise physical control over a child in the face of a criminal charge. That statute provides (as it did at the time of the alleged offense):

> **Use of force by persons with special responsibility for care, discipline, or safety of others.** The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:
>
> (a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and
>
> (b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury,[5] disfigurement, extreme pain or mental distress, or neurological damage.

■ The defendant bears the "initial burden of production with respect to the facts necessary to put the parental discipline defense at issue." *Stocker,* 90 Hawai'i at 95, 976 P.2d at 409. The burden then shifts to the State to "disprove the justification evidence that was adduced or to prove facts negativing the justification defense, and to do so beyond a reasonable doubt." *State v. Kaimimoku,* 9 Haw.App. 345, 350, 841 P.2d 1076, 1079 (1992) (citations omitted). "Because the requirements of HRS § 703–309(1) are set out in the conjunctive, rather than the

---

5. HRS § 707–700 (Supp. 2008) defines "substantial bodily" injury as bodily injury that causes: "(1) A major avulsion, laceration, or penetration of the skin; (2) A burn of at least second degree severity; (3) A bone fracture; (4) A serious con- cussion; or (5) A tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs." This definition applied at the time of the alleged offense.

disjunctive, the prosecution needed only to disprove one element beyond a reasonable doubt to defeat the justification defense." *State v. Crouser*, 81 Hawai'i 5, 11, 911 P.2d 725, 731 (1996).

In this case, the State does not dispute that Kiese is a parent responsible for the general care and supervision of the Minor, so subsection (1)'s requirements are met. As to subsection (1)(a)'s requirements, the State's burden is to prove that the force employed by Kiese was without due regard for the age and size of the minor or "was not actually (subjective) and reasonably (objective) believed necessary to protect the welfare of the [minor.]" *State v. Thate*, 106 Hawai'i 252, 265, 103 P.3d 412, 425 (App.2004). Lastly, although subsection (1)(b) sets forth various kinds of prohibited force, "physical discipline may be so excessive that it is no longer reasonably related to safeguarding the welfare of the minor, even if it does not exceed the bounds set in subsection (b)." *Crouser*, 81 Hawai'i at 12, 911 P.2d at 732.

Most recently, the *Matavale* plurality explained that "reasonableness" of force turns on the totality of the facts and circumstances of each case:

> The means used to effect the discipline must also be reasonable. In determining whether force is reasonable, the fact finder must consider the child's age, the child's stature, and the nature of the injuries inflicted, *i.e.,* whether the *force used* was designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage given the child's age and size. These required factors are obviously general in nature and, by their very terms, place a large amount of discretion with the courts to determine whether the actions of a parent fall within the parameters of parental discipline, as set forth in HRS § 703-309(1). Clearly, there is no bright line that dictates what, under all circumstances, is unreasonable or excessive corporal punishment. Rather, the *permissible degree of force* will vary

according to the child's physique and age, the misconduct of the child, the nature of the discipline, and all the surrounding circumstances. It necessarily follows that the question of reasonableness or excessiveness of physical punishment given a child by a parent is determined on a case-by-case basis and is dependent upon the particular circumstances of the case.

115 Hawai'i at 164–65, 166 P.3d at 337–38 (emphasis in original).

Kiese cites *Matavale* and *State v. Robertson*, No. 28683, 2009 WL 4300387 (App. Nov. 30, 2009) (mem.),[6] in which convictions for abuse of a family or household member were reversed because each parent's justification defense was not disproven under circumstances in which the parent used an implement to strike the child, leaving bruises upon the child. Kiese argues that the ICA gravely erred in affirming his conviction, thereby casting the law of parental discipline "in disarray." We disagree.

Insofar as "due regard for the age and size of the minor" is the sole issue related to the parental justification defense on certiorari, *Matavale* is of limited use to Kiese. In that case, the minor daughter was fourteen years old and 150–154 pounds. 115 Hawai'i at 165, 166 P.3d at 338. Furthermore, the minor daughter in *Matavale* testified that although her mother hit her multiple times with plastic implements, the strikes were not very hard and did not hurt that much. *See id.* The six-year-old Minor in this case, on the other hand, testified that his father's strikes hurt and he cried. The strikes also left visible welts.

Second, insofar as every parental discipline case turns on its own unique facts and circumstances, and insofar as the *Robertson* memorandum opinion is, at most, persuasive, it too is of limited use to Kiese. In that case, a father disciplined his eight-year-old son for lying about receiving a "bad-day note" from school by striking him about eight times on the buttocks with a folded belt. *Robertson*, mem. op. at 3. The child testified that he felt sad and cried after the spanking, but other

---

**6.** Under Hawai'i Rules of Appellate Procedure Rule 35(c)(2) (2010), "Memorandum opinions and unpublished dispositional orders are not precedent, but may be cited for persuasive value[.]"

witnesses testified that later that night and the next day, the child was not in pain and was able to resume his normal activities. *See id.* at 3–4. In reversing *Robertson*'s conviction, the ICA noted that it was not unreasonable for father to conclude that corporal punishment was warranted after non-physical disciplinary measures failed. *See id.* at 9. In this case, Kiese did not just resort to corporal punishment after nonphysical disciplinary measures failed. Rather, he stepped up the nature of the corporal punishment in excess of what he admitted probably would have worked. In any event, *Robertson* is not binding precedent.

 In this case, Kiese slapped the six-year-old Minor on the face and struck him multiple times with a bamboo stick on the buttocks, causing him to feel pain and to cry, and leaving visible red welts a day after the incident. Furthermore, the evidence adduced at trial was that the Minor was a thin, slight, boy, no more than four feet tall, and that Kiese was much larger. In the light most favorable to the State, substantial evidence exists to support the conclusion that the force Kiese employed was without due regard for the age and size of the minor, disproving Kiese's parental justification defense.

Lastly, none of the challenged findings of fact are clearly erroneous. First, as to challenged Findings of Fact Numbers 1 and 13, testimony adduced at trial reflected only that the Minor was "too playful" at school; there was no testimony or other evidence that his behavior was dangerous. Second, Finding of Fact Number 4 is not clearly erroneous, as Ayako testified that when she came home, the Minor either was crying or had finished crying. Third, Finding of Fact Number 16 regarding the family court's visual observations and comparisons of Kiese's and the Minor's size is entitled to deference. Lastly, the sole conclusion of law challenged on appeal is correct. Based on the totality of circumstances in this case, substantial evidence exists to support the conclusion that the state proved beyond a reasonable doubt that the force Kiese employed against the Minor was without due regard for his age and size, and therefore disproved his paren-

tal justification defense. Therefore, substantial evidence supports Kiese's harassment conviction.

## B. The prosecutor's line of questioning asserting his personal knowledge was improper but harmless.

 On certiorari, Kiese argues that the prosecutor's questioning of the Minor concerning statements made to him and to defense counsel in a prior conversation, reproduced *supra,* constituted prosecutorial misconduct warranting a new trial. At the outset, we note that we review this challenge under plain error, as prosecutorial misconduct was not the basis of the objections defense counsel made at trial to the prosecutor's line of questioning. *See* Hawai'i Rules of Penal Procedure ("HRPP") Rule 52(b)(1977) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

 Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, and this court will not overturn a defendant's conviction on the basis of plainly erroneous prosecutorial misconduct unless "there is a reasonable possibility that the misconduct complained of might have contributed to the conviction." *State v. Rogan,* 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (citation omitted). "Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." *State v. Wakisaka,* 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003) (citations omitted). In this case, we hold that the prosecutor's line of questioning was improper but harmless, as there is no reasonable possibility that the error contributed to Kiese's conviction.

At trial, the prosecutor repeatedly questioned the Minor about prior conversations had among the Minor, defense counsel, and the prosecutor concerning the incident. During these questions, defense counsel objected on the bases of hearsay and leading, and the prosecutor justified the questions as laying the foundation for the admission of prior

consistent statements. The family court sustained defense counsel's first objection, but then overruled all of defense counsel's subsequent objections.

▪ The prosecutor characterized his questions as necessary to elicit prior consistent statements from the Minor. Hawai'i Rules of Evidence Rule 613(c) (1993) (governing prior consistent statements) does not support the prosecutor's position:

(c) Prior consistent statement of witness. Evidence of a statement previously made by a witness that is consistent with the witness' testimony at the trial is admissible to support the witness' credibility only if it is offered after:

(1) Evidence of the witness' prior inconsistent statement has been admitted for the purpose of attacking the witness' credibility, and the consistent statement was made before the inconsistent statement; or

(2) An express or implied charge has been made that the witness' testimony at the trial is recently fabricated or is influenced by bias or other improper motive, and the consistent statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen; or

(3) The witness' credibility has been attacked at the trial by imputation of inaccurate memory, and the consistent statement was made when the event was recent and the witness' memory fresh.

▪ In this case, the prosecutor's line of questioning occurred during direct examination of the Minor, who was the first to testify, and whose testimony had not been impeached. Thus, none of the purposes for which a prior consistent statement may be offered applied. As such, "[a] prior consistent statement of a witness who has merely testified in direct examination, without impeachment, is ordinarily excluded because it is unnecessary and valueless." *State v. Altergott*, 57 Haw. 492, 504, 559 P.2d 728, 736 (1977) (citing 4 Wigmore, Evidence § 1124 (Chadbourn rev. 1970)).

In addition, the prosecutor's questions about the prior conversations asserted personal knowledge of facts at issue in the trial where he could not also act as a witness. At oral argument, the State conceded that the prosecutor's questions were improper and that the admission of the testimony was error, but argued that such error did not constitute reversible error. Kiese, on the other hand, asserts that the questions were not only improper, but constituted prosecutorial misconduct warranting a new trial.

▪ In reviewing the nature of the conduct, we do not agree that the prosecutor's improper conduct was as egregious as that present in the cases Kiese cites: *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), *State v. Rulona*, 71 Haw. 127, 785 P.2d 615 (1990), and *State v. Sanchez*, 82 Hawai'i 517, 923 P.2d 934 (App.1996). In *Berger*, the United States Supreme Court held that the Assistant United States Attorney's conduct during trial was indecorous, calculated to mislead the jury with insinuations of out-of-court conversations between the witness and him that never actually took place, and that the pronounced and persistent misconduct had a cumulative effect on the jury, necessitating a new trial. 295 U.S. at 85, 89, 55 S.Ct. 629. In *Rulona*, this court reversed a defendant's judgment of conviction because the combination of three errors made by the trial court (only one of which was that it did not stop the prosecutor's questioning of a witness about a prior conversation had between the two of them) denied the defendant a fair trial. 71 Haw. at 133, 785 P.2d at 618 (citing *Berger*, 295 U.S. at 84, 55 S.Ct. 629).

Similar to Berger, in *Sanchez*, a new trial was warranted because of multiple instances of aggressive and out-of-bounds comments and questions by the prosecutor (including assertions of personal knowledge), the cumulative effect of which was to deny the defendant of a fair trial. 82 Hawai'i at 534, 923 P.2d at 951. In that case, the prosecutor questioned the witnesses about prior conversations had with him and contradicted the testimony they gave. 82 Hawai'i at 529–30, 923 P.2d at 946–47. The prosecutor then indicated that he could prove that his version of the prior conversation was correct through

other witnesses present, but the record did not reflect that this was ever done. *See id.*

Unlike the prosecutors in *Berger* and *Sanchez*, the prosecutor's improper conduct here seemed merely to reflect an apparent lack of awareness of the prohibition against making himself a witness during trial. Compounding the prosecutor's misunderstanding was that neither the defense counsel nor the family court explicitly recognized the prosecutor's line of questioning as improper on the basis of Hawai'i Rules of Professional Conduct Rule 3.4. Instead, defense counsel objected to the line of questioning as hearsay and leading, while the family court overruled and sustained defense counsel's objections on bases that were not clear. Thus, the prosecutor's improper conduct proceeded unchecked. The improper conduct, however, was harmless. *See, e.g., State v. Tuua,* 125 Hawai'i 10, 13–17, 250 P.3d 273, 276–80 (2011) (citing, *inter alia, State v. Maluia,* 107 Hawai'i 20, 27, 108 P.3d 974, 981 (2005), to hold that the prosecutor's conduct was improper before proceeding to a harmlessness analysis).

In examining the second step in the harmlessness analysis, the promptness of a curative instruction, we note that "where a case is tried without a jury, it is presumed that the presiding judge will have disregarded the incompetent evidence and relied upon that which was competent." *State v. Antone,* 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) (citations omitted); *see also State v. Gutierrez,* 1 Haw.App. 268, 270, 618 P.2d 315, 317 (1980).[7]

The most damaging testimony resulting from the prosecutor's improper line of questioning was that Kiese may have struck the Minor in the face with a bamboo stick. Kiese argues that the admission of this testimony forced him to testify that he had only slapped the Minor in the face. Kiese's argument is, however, undercut by the record. The Minor's testimony regarding whether

Kiese struck him on the face with a stick was deeply contradictory[8]; he testified that Kiese "maybe sometimes or not sometimes" or did "not really" strike him in the face with a stick. He also testified that he "[did not] know" if Kiese struck him in the face with a stick. When the prosecutor persisted in re-asking the question, the Minor finally nodded.

Further, Officer Lordy Cullen also testified that the Minor told him, when asked, that all the red marks (including the one on his face) were made with "a yellow stick." Kiese does not allege any error with the prosecutor's questioning of Officer Cullen. Kiese's decision to testify thus may have been prompted by Officer Cullen's testimony, which was properly elicited, not just the Minor's testimony, elicited through the prosecutor's improper line of questioning.

The family court appears to have disregarded the contradictory testimony given by the Minor about whether Kiese struck him in the face with the bamboo stick. No mention is made of that testimony at all, and in unchallenged Finding of Fact Number 6, the family court found that Kiese slapped the Minor on the face with an open hand. Not much, if any, of the Minor's testimony is reflected in the Findings of Fact and Conclusions of Law.

Lastly, even disregarding the Minor's testimony, the evidence against Kiese was not weak. Kiese admitted that he slapped the Minor's face with his open hand once and struck the Minor's hands, arms, and buttocks five or six times with a bamboo stick. Kiese also admitted that an open-handed spank would probably have been sufficient to correct the Minor's misbehavior. The photographic evidence, entered via Officer Cullen's testimony, showed that red marks were still visible on the Minor's face, hands, and arms the day after the alleged incident. Ayako testified that at one point, the Minor was

---

7. We note that while it is generally presumed that the presiding judge in a bench trial disregarded incompetent evidence, the presumption is, of course, rebuttable.

8. In this regard, we disagree with the ICA's assertion that "the answers elicited from [the

Minor in response to the prosecutor's improper line of questioning] were later confirmed by Kiese." *Kiese,* mem. op. at 20. Although we disagree, the ICA's statement does not constitute grave error requiring a reversal of Kiese's conviction.

crying after the incident. Based on these facts, we conclude that the prosecutor's improper line of questioning was harmless beyond a reasonable doubt.

### C. The ICA did not gravely err by making presumptions about the record to sustain the conviction.

Kiese argues on certiorari that the ICA improperly assumed that the Minor was competent to testify and improperly relied on facts not in evidence to affirm his conviction. These arguments are based upon the numerous instances in the record where the Minor's testimony registered as "no audible response" and the court, prosecutor, and defense attorney noted for the record that the Minor was nodding, shaking his head, or shrugging. Kiese argues, "Because the family court did not require a clear response from [the Minor], the transcript was not complete and significant portions of [the Minor's] answers were never ascertained." The gist of his argument is that the ICA could not have legitimately rendered its decision with such an incomplete transcript of the Minor's testimony and response to the oath, so its disposition is based on assumptions and speculation. We reject this argument.

■ "[T]he general rule is that where the transcripts of a defendant's trial are incomplete because they omit portions of the trial proceedings, such omissions do not mandate reversal unless they specifically prejudice the defendant's appeal." *State v. Ganotisi*, 79 Hawai'i 342, 343, 902 P.2d 977, 978 (App. 1995) (citations omitted). In *Ganotisi*, the ICA rejected an appellant's contention that 368 notations by the court reporter of "no audible response," "indiscernible words," or "indiscernible whisperings or conversation" for transcripts covering a two-day trial (total-

ing 325 pages) prejudiced the appellant's right to a meaningful appeal and therefore violated his due process rights. *See id.*[9]

■ Similarly, in this case, although no audible response was recorded to the oath and to questions posed to the Minor during the competency hearing and trial, the court, prosecutor, and defense counsel frequently interpreted for the record the gestures the Minor was making. No party objected to the interpretations. It appears that what was captured for the record at the trial level was understood by all. The transcript of the Minor's testimony was no less ascertainable by the ICA than by this court. In any event, as noted earlier, not much, if any, of the Minor's testimony is reflected in the Findings of Fact, and there was otherwise substantial evidence to sustain Kiese's harassment conviction.

### D. The family court erred in denying Kiese's request to stay his sentence.

■ Lastly, both the State and Kiese agree that the family court erred in denying Kiese's request to stay the execution of his sentence pending appeal. Because we ultimately affirm Kiese's conviction, and since during the pendency of this appeal, Kiese's six-month probationary sentence has been satisfied, the determination of whether the trial court erred in denying his motion to stay his sentence pending appeal is now moot. Appellate courts generally do not decide moot questions. *See Wong v. Bd. of Regents*, 62 Haw. 391, 395, 616 P.2d 201, 204 (1980).

■ This court has, however, recognized three exceptions to the mootness doctrine: matters capable of repetition yet evading review,[10] matters affecting the public interest,

---

9. The number of omissions in the transcript is not dispositive. The question is whether omissions that render the transcripts incomplete prejudice the defendant's appeal. That determination must be made on a case-by-case basis.

10. We first recognized the mootness exception for matters that are capable of repetition yet evading review in *Life of the Land v. Burns*, 59 Haw. 244, 580 P.2d 405 (1978). In that case, we held:

> The phrase, "capable of repetition, yet evading review," means that a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because of [sic] *the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit.*
>
> 59 Haw. at 251, 580 P.2d at 409–10 (citation omitted; emphasis added).

and matters posing collateral consequences [11] for the defendant.[12] Kiese argues applicability of only the second exception; therefore, we analyze only whether that exception applies.

## 1. The Public Interest Exception

▮ This court recognized the public interest exception to the mootness doctrine in *Johnston v. Ing*, 50 Haw. 379, 441 P.2d 138 (1968). In that case, we held:

> There is a well settled exception to the rule that appellate courts will not consider moot questions. When the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, the exception is invoked.

50 Haw. at 381, 441 P.2d at 140. We look to "(1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question." *Doe v. Doe*, 116 Hawai'i 323, 327, 172 P.3d 1067, 1071 (2007) (citations omitted).

▮ In this case, the appellate record refers to multiple cases in which a stay has been denied to petty misdemeanants pending appeal. As such, the first and third prongs of the public interest exception test are met, in that the denial of a request for a stay of sentence appears to be an issue that could potentially affect many petty misdemeanor defendants (that is, it is not an issue unique to Kiese as a private individual), and is likely to recur in the future. As to the second prong, because there is no definitive case law on when the issuance of a stay after a petty misdemeanor conviction is appropriate, an authoritative determination is desirable to guide trial courts. As such, the denial of Kiese's request for a stay meets the public interest exception to the mootness doctrine.

Existing case law also supports the general application of the public interest exception in the context of stays. *See State v. Cullen*, 86 Hawai'i 1, 13, 946 P.2d 955, 967 (1997) ("Our affirmance of [Appellant's] conviction moots the prosecution's [challenge to the sentencing court's application of HRS § 804–4]. However, this court has long recognized the exception to the mootness doctrine that arises with respect to matters affecting the public interest.") (citations omitted). Therefore, the ICA erred in not addressing the merits of the stay issue based on the mootness doctrine. *Cf. State v. Durham*, 125 Hawai'i 114, 126–27, 254 P.3d 425, 437–38 (2011) (concluding that the mootness doctrine did not preclude this court from reviewing whether the trial court erred in considering improper facts in revoking the defendant's probation, although the defendant had completed the

In this case, Kiese has not argued applicability of the capable of repetition yet evading review exception to the mootness doctrine, and we do not address its applicability to the facts of this case.

11. This court recently recognized a third exception to the mootness doctrine—the collateral consequences exception—in *Hamilton v. Lethem*, 119 Hawai'i 1, 193 P.3d 839 (2008). Collateral consequences include the legal and reputational consequences of a judicial action otherwise unreviewable for mootness.

> To successfully invoke the collateral consequences exception:
>
>> [T]he litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciabil-

ity underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future.

119 Hawai'i at 8, 193 P.3d at 846, citing *Putman v. Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256, 1262 (2006)(emphasis omitted).

In this case, Kiese has not argued applicability of the collateral consequences exception to the mootness doctrine, and we do not address its applicability to the facts of this case.

12. We note that the public interest exception to the mootness doctrine is "separate and distinct" from the "capable of repetition, yet evading review" exception. *United Public Workers, AFSCME, Local 646, AFL–CIO v. Yogi*, 101 Hawai'i 46, 59, 62 P.3d 189, 203 (2002) (Acoba, J., concurring).

**510**

special probation condition of a one-year term of imprisonment).

### 2. The Merits of the Stay Issue

Proceeding to the merits of the issue, we conclude that the family court erred by denying Kiese's request for a stay.

Under HRAP Rule 8(c) (1984), "Stays in criminal cases shall be had according to law." HRS § 641–14(a) (1993) provides, "The filing of a notice of appeal or the giving of oral notice in open court at the time of sentence by the defendant or the defendant's counsel of intention to take an appeal may operate as a stay of execution and may suspend the operation of any sentence or order of probation, in the discretion of the trial court."

Although stays are discretionary under HRS § 641–14, HRS § 804–4(a) provides, "The right to bail shall continue after conviction of a . . . petty misdemeanor[.]" See also HRS § 804–4(b)("No defendant entitled to bail, . . . shall be subject, without the defendant's written consent, to the operation of any sentenced passed upon the defendant, while any proceedings to procure a review of any action of the trial court . . . are pending and undetermined, except as provided in section 641–14(a)[.]"). In *State v. Ortiz,* we held, "An accused misdemeanant, petty misdemeanant, or law violator on bail is entitled to bail as a matter of right after conviction and pending appellate review." 74 Haw. 343, 356, 845 P.2d 547, 553 (1993). Furthermore, pursuant to *State v. Miller,* 79 Hawai'i 194, 200–01, 900 P.2d 770, 776–77 (1995), once release on bail pending appeal is secured, a trial court is without jurisdiction under the sentence of probation that is the subject of the defendant's appeal.

Therefore, we hold that Kiese, as a petty misdemeanant on bail after conviction, was entitled to a continuance of bail pending appellate review, during which time the trial court was without jurisdiction to execute his probationary sentence; accordingly, the family court erred by denying Kiese a stay of his petty misdemeanor sentence pending appeal.

### III. CONCLUSION

We hold that the ICA erred in not addressing the stay of sentence issue based on the mootness doctrine because the public interest exception applies, and the family court erred in denying Kiese's motion to stay his sentence pending appeal. Although we accepted certiorari to address the stay of sentence issue, because Kiese has already served his probationary sentence, and because Kiese's *judgment of conviction is affirmed,* we affirm the ICA's judgment on appeal.