**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000423
16-OCT-2023
07:47 AM
Dkt. 44 SO**

NO. CAAP-21-0000423

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MICHAEL G. JUSTO; JAMIE L.M. JUSTO, Petitioners-Appellees, v.
THALIA KAUKA, Respondent-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH HILO DIVISION
(CIVIL NO. 3DSS-21-0000430)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Wadsworth and McCullen, JJ.)

Respondent-Appellant Thalia Kauka (**Kauka**) appeals from
the Order Granting Petition for Injunction Against Harassment
(**Injunction**), entered on July 2, 2021, in the District Court of
the Third Circuit, North and South Hilo Division (**District
Court**).[1] Following an evidentiary hearing, the District Court
enjoined Kauka from, among other things, contacting, threatening,
or harassing self-represented Petitioners-Appellees Michael G.
Justo (**Michael**) and Jamie L.M. Justo (**Jamie**) (collectively, the
**Justos**), and any persons residing at their residence, for a
period of three years.

On appeal, Kauka contends that: (1) the District Court
erred in finding that Kauka engaged in harassment against the
Justos pursuant to Hawaii Revised Statutes (**HRS**) § 604-
10.5(a)(2), where there was no evidence that Kauka made
intentional or knowing statements directed at the Justos; and (2)
Kauka's statements were protected by her "right of privacy in the

---

[1] The Honorable M. Kanani Laubach presided.

confines of her own home" and "the right to say whatever she wishes."[2/]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Kauka's contentions as follows and affirm.

### I.  Background

On June 1, 2021, the Justos filed a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment (**Petition**).  In an accompanying declaration, Michael attested that Jeremy Costa (**Costa**) and Kauka are neighbors that "have threatened and harassed us for years."  As to Kauka, Michael stated:

> . . . Kauka has verbally harassed my wife and children for years, on occasion calling her a "cunt" and saying things like "you and your fucking kids."  She has harassed me on the road as I leave for work in the morning and will stand at the end of our driveway and video (on her cell phone) me leaving.  This has happened on multiple occasions.  I have video documentation of her verbally describing us as "ignorant neighbors," "cunts," and "mother fuckers."  In one video from 05-03-2021 she says (directed at us), "suck my ass, suck my dick all day long."
>
> Both of these individuals are mentally unstable and very unpredictable.  I am afraid for the safety of my two children and wife. . . .  Costa and . . . Kauka have caused much psychological distress for myself and my family.  Every day we are living in fear.  Due to these incidents my two young children are afraid to live in their own home, which should be a safe environment for them.  As a result of the most recent incidents on 05-19-21 and 05-23-21 we have been forced to relocate to a family member's home.  This has also caused much distress and financial hardship for our family.

On June 2, 2021, the District Court entered a Temporary Restraining Order Against Harassment as to Costa and Kauka, and set a June 16, 2021 hearing date on the Petition.  On June 16, 2021, Costa failed to appear, and the District Court entered an Order Granting Petition for Injunction Against Harassment as to

---

[2/]     Kauka's points of error have been reordered and restated for clarity.  Kauka's opening brief does not comply with HRAP Rule 28(b) in numerous respects.  Nevertheless, Hawaiʻi appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'"  <u>Marvin v. Pflueger</u>, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (quoting <u>Morgan v. Plan. Dep't, Cty. of Kauai</u>, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004)).

Costa.  The Court continued the matter as to Kauka and held an evidentiary hearing on July 2, 2021.

At the hearing, Jamie, Michael, and Kauka testified.  Jamie testified to the following during her direct examination:  For years, since buying their house in 2016, the Justos and their children have endured Kauka yelling at them.  Kauka, who lives next door to the Justos, has yelled at Jamie through the hedges of the Justos' driveway, calling Jamie a "cunt."  Kauka "has said things like, 'You and your fucking kids[,]'" when the Justos' children were present.  The children are afraid, and Jamie is afraid for them.  Kauka's tone is aggressive and unprovoked.  During the prior two months, Kauka has "driven by [the Justos'] house and made gagging noises like, 'Urrk.'"

Jamie also testified during cross-examination as follows:  The Justos had security cameras installed because of their neighbors and have had those cameras since at least September 2019.  Jamie does not believe that a tree-trimming incident between the Justos and Kauka has anything to do with Kauka's conduct, because that matter was settled.  Jamie's last contact with Kauka was when Kauka drove by the Justos' house and gagged at Jamie – '"'Aack,' like that" – "just prior to [the Justos] putting the TRO on her."

Jamie engaged in the following exchange with Kauka's counsel, in which counsel and Jamie referenced the Justos' exhibit list, which identified Exhibits 1 through 4 as four "[v]ideo clip" recordings taken from the Justos' security cameras:[3]

---

[3]     The Justos' exhibit list identifies the following exhibits:

Exhibit 1, described as "Video clip from 9/21/19, 4:37 am.  [Kauka] yelling 'Fuck you!'"

Exhibit 2, described in part as "Video Clip from 12/21/2020, 4:22 am."

Exhibit 3, described as "Video clip from 3/25/21, 10:48 am.  [Kauka] yelling loudly from her home."

Exhibit 4, described in part as "Video clip from 4/26/21, 4:49 am. . . .  [Kauka] yells 'cunts' and calls us 'ignorant neighbors'  Says . . . 'They can suck my ass, suck my dick all night long[.]'"

3

[KAUKA'S COUNSEL] . . . . [W]hen's the last time you heard something from Miss Kauka before she gagged at you?

[JAMIE] Not for awhile. Probably the videos would be the last. The one[,] the April 2021.

Q. . . . . Miss Kauka's utterances that you are concerned with that would be April 26, 2021. Is that right?

A. Yes.

Q. And before that would be, um, the March 25th, 2021 event?

A. Yes.

Q. And before that would be the . . . December 21st, 2020 event?

A. Yeah, and then this.

Q. So that would be the accurate succession of times that --

A. Yes.

Q. -- Miss Kauka said --

A. Yes.

Q. -- things to you?

A. Yes, and that's why I put it in that order.

Q. Okay. And before the December 21st, 2020 event it would be the September 21st, 2019 event?

A. Yes.

Q. So that would be the succession of times --

A. Yes.

Q. -- that you heard Miss Kauka screaming at you or carrying on improperly?

A. In recent times, yeah.

The Justos' Exhibits 1 through 4 were admitted into evidence after Kauka's counsel stated: "I'm happy with their entry into evidence. . . . If they're gonna move it in I'd be okay." The District Court then took a recess to view and listen to Exhibits 1 through 4, which were on a "jump drive."

After Jamie testified, Michael testified in part as follows: He leaves in the morning at 4:30 a.m. "[J]ust out of the blue [Kauka] say[s] things[.]" She says things "[l]ike, you know, 'Niggers.' She always says that. Just, 'Niggers.'" One time, Kauka "came driving up the driveway with a bathing suit on

4

her bike" and "knock[ed] on the window saying, . . . 'You guys home?'" Michael is scared for his family due to Kauka's actions and "this unnecessary yelling at us[.]"

In her testimony, Kauka stated that she has had essentially no contact with the Justos "[f]or years." Regarding the video recordings, Kauka testified as follows:

> [KAUKA'S COUNSEL] And in those videotapes were you aiming your language in any way, shape or form towards the Justos?
>
> [KAUKA] Part of the conversation's between [Costa] and I.
>
> Q. Who's [Costa]?
>
> A. My son. And he's deteriorating and it's been very hard.
>
> . . . .
>
> Q. And the conversations that you heard on the tape is that conversations between you and [Costa]?
>
> A. Yes.
>
> Q. Any of those conversations directed at the Justos?
>
> A. Never.

Kauka further testified:

> Q. Mrs. Justo said that you were gagging when you drove by your house. Do you remember that?
>
> A. I -- I do gag. I have heart problems. I do gag. It doesn't make -- mean that it was directly directed at them. . . .

Following closing arguments, the District Court ruled:

> I am gonna find that the plaintiffs have met their burden. I'm gonna find that they have done so by clear and convincing evidence. That the allegations underlying the request for an order for protection are true.
>
> So even if . . . I buy [Kauka's counsel's] argument that, you know, Miss Kauka was doing this all in the sanctity of her own home --
>
> . . . .
>
> . . . -- I have [a] very hard time to believe those things and this is the reason why. Right?
>
> I mean you're saying that they are private conversations with your child who is deteriorating mentally. Right? So first thing in my mind is why would you yell -- and -- and I only hear your voice. Right? I don't hear a

male party speaking at all.

So that's . . . the first thing I'm looking at. Right? . . . I don't think it's conversations with your child. . . .

So even if I then take [Kauka's counsel's] argument, "Well, Judge, you know, it wasn't directed at the neighbors," the last clip Exhibit 4 I have [a] hard time because you -- you actually mention your neighbors. Right? And you say, you know, "They can suck my ass. Suck my dick." Right?

So -- and I have to look -- like I said earlier I have to look at it not in a vacuum. Right? Not only this one piece, this one piece separately. I gotta look at all of it.

But what turned the table for the Court is Miss Justo's testimony about the incidents that happened before the video. I mean that's the reason why they ended up getting a camera, right, because all these other incidents happened.

. . . .

So I am gonna find that they have proven their case. . . . And I'm gonna issue the order and it's gonna be for three years.

And I do find that Miss Justo's testimony is credible. That even before the video clips there were multiple incidences involving herself with her children and Miss Kauka.

The Injunction was entered the same day.

## II. Discussion

Under HRS § 604-10.5(a)(2) and (g) (2016 and Supp. 2022), the district court "shall" grant an injunction prohibiting the respondent from harassing the petitioner if "the court finds by clear and convincing evidence that" the respondent engaged in an "intentional or knowing course of conduct directed at [the petitioner] that seriously alarm[ed] or disturb[ed] consistently or continually bother[ed] the [petitioner] and serve[d] no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress." See Luat v. Cacho, 92 Hawaiʻi 330, 340-41, 991 P.2d 840, 850-51 (App. 1999). "[T]he type of harassment that the courts are mandated to restrain or enjoin under paragraph (2) [of HRS § 604-10.5(a)] involves an intentional or knowing pattern of conduct composed of a series of acts over any period of time and evidencing a continuity of purpose that is not legitimate, and is directed at,

6

seriously alarms, disturbs consistently, or continually bothers an individual and would cause a reasonable person to suffer emotional distress.  It is conduct that involves systematic and continuous intimidation that stops short of assault or threats . . . ."  Id. at 342, 991 P.2d at 852.

Whether there was substantial evidence to support an injunction against harassment is reviewed under the "clearly erroneous standard."  Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999).  "A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case."  Id. (brackets omitted) (quoting Booth v. Booth, 90 Hawaiʻi 413, 416, 978 P.2d 851, 854 (1999)).

In addition, HRS § 604-10.5(g) requires that the clear and convincing standard of proof be applied in determining whether conduct rises to the level of "harassment," as defined in paragraph (a).  On appeal, we apply the clearly erroneous standard as follows:

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a *reasonable factfinder* could have found it *highly probable* that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.

In re JK, 149 Hawaiʻi 400, 409-10, 491 P.3d 1179, 1188-89 (App. 2021) (quoting Conservatorship of O.B., 470 P.3d 41, 55 (Cal. 2020)).

## A.  Intentional or Knowing Course of Conduct

Kauka contends that there was no evidence to support the conclusion that she made intentional or knowing statements directed at the Justos.  She argues that "the words heard on the Jump Drive . . . were not 'directed' at [the Justos] and further do not thereby amount to an 'intentional [or] knowing course of conduct' as the words heard appear random and aimless."  Kauka

7

also asserts that she "did not know that [the Justos] were listening" to her statements.

After hearing testimony and argument from Kauka and the Justos, the District Court rejected Kauka's characterization of the evidence. Specifically, the District Court acknowledged Kauka's claim that she "was doing this all in the sanctity of her own home[,]" but then stated:

> THE COURT: -- I have [a] <u>very hard time to believe</u> those things and this is the reason why. Right?
>
> I mean you're saying that they are private conversations with your child who is deteriorating mentally. Right? So first thing in my mind is <u>why would you yell</u> -- and -- and <u>I only hear your voice</u>. Right? <u>I don't hear a male party speaking at all</u>.
>
> . . . <u>I don't think it's conversations with your child</u>. . . .
>
> So even if I then take [your counsel's] argument, "Well, Judge, you know, it wasn't directed at the neighbors," the last clip Exhibit 4 <u>I have [a] hard time because you -- you actually mention your neighbors</u>. Right? And you say, you know, "They can suck my ass. Suck my dick."

(Emphases added.) The District Court found that Kauka engaged in multiple incidents of harassment.

Based on our review of the record, we conclude that this mixed conclusion of law and fact was supported by the substantial, credible evidence presented at the hearing and was therefore not clearly erroneous. We further conclude that based on the evidence of Kauka's acts, statements, and the surrounding circumstances, including Jamie's testimony on these subjects and the Justos' Exhibits 1 through 4, there was substantial evidence from which the District Court could reasonably have found it highly probable that Kauka engaged in an intentional or knowing course of conduct that was directed at the Justos as defined in HRS § 604-10.5(a)(2). <u>See</u> <u>State v. Calaycay</u>, 145 Hawaiʻi 186, 200, 449 P.3d 1184, 1198 (2019) ("[T]he mind of an alleged offender may be read from his acts, conduct, and inferences fairly drawn from all of the circumstances." (quoting <u>State v. Kiese</u>, 126 Hawaiʻi 494, 502-03, 273 P.3d 1180, 1188-89 (2012))). In disputing her intent, Kauka argues the weight of the evidence, ignoring the District Court's express finding that Jamie's

testimony was credible, and its implied finding that Kauka's explanation for her conduct was not credible. As discussed above, we will not pass on the credibility of a witness or the weight of the evidence. See JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89. Substantial evidence supports the conclusion that Kauka engaged in an intentional or knowing course of conduct that was directed at the Justos, which constituted harassment as defined in HRS § 604-10.5(a)(2).

## B.  Right of Privacy

Kauka contends that she has "a right of privacy in the confines of her own home, with the right to say whatever she wishes." She argues that "[t]here was no testimony that [her] words were shouted or that [the Justos] heard [Kauka] directly and independently of the Jump Drive." She also argues that the Circuit Court "erred as a matter of law in considering the Jump Drive as evidence of a continued course of harassment."

During the July 2, 2021 hearing, however, Kauka's counsel acknowledged in closing argument: "[T]he house is apparently close together, and what it appears . . . from the video or the audio/video evidence is [Miss] Kauka <u>is indeed yelling and screaming</u> but it's inside her house . . . ." (Emphasis added.) Additionally, during her testimony at the hearing, Jamie confirmed that <u>she heard</u> Kauka's utterances, as summarized in the Justos' exhibit list:

> [KAUKA'S COUNSEL]  So that would be the accurate succession of times that --
>
> [JAMIE]  Yes.
>
> Q.  -- <u>Miss Kauka said</u> --
>
> A.  Yes.
>
> Q.  -- <u>things to you</u>?
>
> A.  Yes, and that's why I put it in that order.
>
> . . . .
>
> Q.  So that would be the succession of times --
>
> A.  Yes.
>
> Q.  -- that <u>you heard Miss Kauka screaming at you or carrying on improperly</u>?

         A.  In recent times, yeah.

(Emphases added.)  Based on Jamie's testimony, the Circuit Court could reasonably have concluded that during the identified incidents, Kauka was yelling or talking loud enough at the Justos for Jamie to hear her, and that Jamie did hear her.

A person cannot reasonably have a privacy interest in that which is knowingly exposed to the public, such as yelling or screaming that can be heard outside of the person's home.  See State v. Texeira, 62 Haw. 44, 49, 609 P.2d 131, 135 (1980), overruled on other grounds by State v. Chang, 144 Hawaiʻi 535, 553, 445 P.3d 116, 134 (2019); State v. Augafa, 92 Hawaiʻi 454, 465, 992 P.2d 723, 734 (App. 1999); see also Moysa v. Davies, No. 28753, 2009 WL 1178659, at *2 (Haw. App. May 4, 2009) (SDO) (concluding that special condition in injunction against harassment that restricted sound that could be heard outside of the respondents' home did not interfere with their right to privacy), vacated on other grounds, 2009 WL 3166784, at *2 (Haw. Oct. 2, 2009) (SDO).  Here, substantial evidence supports the conclusion that Kauka's acts and statements constituted harassment directed at the Justos.  Neither Kauka's right to privacy nor to freedom of speech insulates her from liability for harassment in these circumstances.  See Moysa, 2009 WL 1178659, at *2 ("Courts may properly restrict statements made with the intent to harass." (citing Brekke v. Wills, 125 Cal. App. 4th 1400, 1409 (Cal. Ct. App. 2005), and Thorne v. Bailey, 846 F.2d 241, 243 (4th Cir. 1988))).

We also reject Kauka's contention that the Circuit Court erred in considering the video recordings of Kauka's actions and statements as evidence of a continued course of harassment.  During the July 2, 2021 hearing, Kauka's counsel expressly agreed to the admission of the Justos' Exhibits 1 through 4 into evidence, and did not object when the Circuit Court took a recess to view and listen to them.  Kauka thus waived any objections to the admission of the recordings into evidence, and to their consideration by the Circuit Court as evidence of a continued course of conduct by Kauka directed at the Justos.  See State v. Gonzalez, 128 Hawaiʻi 314, 317, 288

P.3d 788, 791 (2012) (noting that "the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal" (quoting <u>State v. Kikuta</u>, 125 Hawaiʻi 78, 89, 253 P.3d 639, 650 (2011))); Hawaii Rules of Evidence Rule 103(a)(1).

### III.  Conclusion

For the reasons discussed above, the Order Granting Petition for Injunction Against Harassment, entered on July 2, 2021, in the District Court of the Third Circuit, North and South Hilo Division, is affirmed.

DATED:  Honolulu, Hawaiʻi, October 16, 2023.


On the briefs:

Ivan L. Van Leer
for Respondent-Appellant.

Michael G. Justo and
Jamie L.M. Justo,
Self-represented Petitioners-
Appellees.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Sonja M.P. McCullen
Associate Judge