**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000138
26-DEC-2023
07:54 AM
Dkt. 77 SO**

NO. CAAP-21-0000138

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MADELYN E. AMAR, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO.  1DTA-18-02966)

SUMMARY DISPOSITION ORDER
(By:  Wadsworth, Presiding Judge, Nakasone and Guidry, JJ.)

Defendant-Appellant Madelyn Evelyn Amar (**Amar**) appeals from the February 5, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment and the March 1, 2021 Notice of Entry of Judgment and/or Order and Plea/Judgment (collectively, **Judgment**) entered by the District Court of the First Circuit, 'Ewa Division (**District Court**),[1] convicting Amar of operating a vehicle under the influence of an intoxicant (**OVUII**) in violation of Hawai'i Revised Statutes (**HRS**) § 291E-61(a)(1) and/or (a)(4).[2]  Amar

---

[1]  The Honorable Sherri-Ann L. Iha presided over the February 5, 2019 trial.  The Honorable Tracy S. Fukui presided over the March 1, 2021 restitution hearing, which is not at issue in this appeal.

[2]  While the trial transcript does not specifically reflect whether Amar was convicted of violating HRS § 291E-61(a)(1) or (a)(4), it appears from the evidence presented, which did not include any evidence of subsection (a)(4) blood alcohol concentration, that Amar was convicted under subsection
(continued...)

raises four points of error: (1) "[p]rosecutorial misconduct, trial court error, and ineffective assistance by defense counsel resulted in improper consideration of 'the [unadmitted] video,' which formed the basis for all [Plaintiff-Appellee State of Hawaiʻi's (**State**)] witness testimony, in violation of Amar's rights to due process and fair trial";[3] (2) "[t]he State presented insufficient evidence that Amar drove on a 'public way, street, road, or highway'"; (3) "[t]he trial court committed misconduct in assisting the prosecutor by laying foundation for the six photos contained in S-Exh. 1, 2, and 3, then admitting them into evidence"; and (4) "Amar's rights to due process and [a] fair trial" were violated when the District Court considered a motor vehicle collision (**MVC**) diagram that was not admitted into evidence.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Amar's points one and two as follows, and reverse for insufficient evidence.[4]

The evidence presented at the February 5, 2019 bench trial came from the State's four witnesses, and Amar did not testify or present witnesses. The State's four witnesses were eyewitness Sabrina Saunoa (**Saunoa**), Honolulu Police Department (**HPD**) Corporal Cary Izuka (**Corporal Izuka**), HPD Officer Charles Rezentes (**Officer Rezentes**), and HPD Officer Kristi DeGuzman

---

[2](...continued)
(a)(1). HRS § 291E-61(a)(1)(2018) provides, in relevant part:

> **§ 291E-61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[3] The brackets for the word "unadmitted" are in the original.

[4] In light of our disposition, we do not reach points three and four.

(**Officer DeGuzman**).  In their testimonies, the witnesses described two events pertinent to this case: (1) a police investigation of a MVC involving a vehicle striking a wall then leaving the scene, which occurred on August 19, 2018, around 11:40 p.m. near 98-731 Moanalua Loop (**Accident Scene**), and (2) a police response to an argument call about "ten minutes" later, involving two people observed walking away from a damaged vehicle at 611 Kilinoe Street (**Argument Scene**), which was near the Accident Scene.

### Accident Scene testimony

Saunoa testified that at around 11:40 p.m. she heard a "really loud" sound while in her apartment at 98-731 Moanalua Loop.  She went outside and saw a car by a wall in the "Verizon building parking lot" across the street.  She testified that "a person jump[ed] out of the car[,]" "was yelling on the phone," then "went back in the car and started to . . . drive away but couldn't."  Saunoa started recording a video because the driver was "revving the engine"; and that their "cars [we]re right across the street" from "the parking structure-where that car was," and that she was "scared somebody was gonna [sic] bang [their] cars."  Saunoa testified that the vehicle did not enter the street because "it stayed on the gravel[,]" "was stuck" and "couldn't move."[5]  She saw only one person in the car, and testified she might "sort of" be able to recognize the person if she saw them again, and stated she thought the person was female, even though the police and "a lot of people were saying it was a

---

[5]    Saunoa testified as follows:

> Q. [(By Deputy Prosecuting Attorney (**DPA**)] Okay. While you're recording this incident does the vehicle ever drive onto the street?
>
> A. [(By Saunoa)] Um, it stayed on the gravel.
>
> Q. Okay
>
> A. It was stuck.  It couldn't move.

male."[6]  Saunoa did not observe anyone drive away from the scene because she went inside her apartment after recording the video, and when she returned the car was gone.[7]

---

[6]  Saunoa's testimony about whether she could identify the person with the vehicle was equivocal, as follows:

> Q. [(By DPA)] If you were to see that person again, would you be able to recognize her?
>
> A. [(By Saunoa)] Not -- not clearly but, like, sort of.  Yeah, I can --
>
> Q. Okay.
>
> A. -- but not -- I didn't -- wasn't close enough to see that person.  I was far where I could see how tall -- kinda see how tall that person was.

Regarding the gender of the person she observed with the vehicle, Saunoa explained she initially agreed with others who said the person was a "he," but changed her position to the person being a "she" because of the "female voice" she heard, as follows:

> A. [(By Saunoa)] Um, the pers -- uh, just the person was on the phone, was yelling on the phone.  I'm cer -- I -- I heard a female voice.
>
> Q. [(By DPA)] Okay.
>
> A. So a lot of people were saying it was a male.  They (inaudible) it was a guy.  But I was like, no, I heard a female voice.
>
> . . . .
>
> A. The cops were kept -- they kept saying it was a he, so I just said okay, it's a he.  But I said, no, it's a she.  I was a hundred percent sure it was a she.
>
> Q. [(By defense counsel)] So you're changing your testimony now?  Because just a moment ago you said he jumped out.
>
> A. No, it was a she.
>
> Q. So it's a she?
>
> A. It was a she, yeah.  I heard a she voice.  And I told the cops it was a she, but they said it must have been -- well, all the witnesses said it was a he.

[7]  Saunoa testified as follows:

> Q. [(By defense counsel)] Did you observe anyone drive away from the scene?

(continued...)

Saunoa provided her cell phone video to the police officers at the Accident Scene. She also brought her cell phone containing the video to the trial. The record reflects that at that point during the trial, the State asked the video to be entered into evidence; the defense objected under Hawaiʻi Rules of Evidence (**HRE**) Rule 901; the District Court's response to the defense's objection was inaudible; the State asked Saunoa to "describe for the court what happens in that video"; and Saunoa did so, as follows:

> Q. [(By DPA)] Did you bring the original video –
>
> A. [(By Saunoa)] Yeah.
>
> Q. -- with you today?
>
> A. (No audible response.)
>
> [DPA]: Honor [sic], I have a copy, but, um, it's actually clearer on her phone. Uh, State would ask to enter the video into evidence. Um, but perhaps we should view it, the original, on her phone.
>
> THE COURT: Mr. [defense counsel]?
>
> [DEFENSE COUNSEL]: Uh, yes, Your Honor? Uh, defense objection under Hawaii Rule of Evidence I believe it's 90-901.
>
> THE COURT: Okay. (Inaudible.)
>
> [DEFENSE COUNSEL]: And --
>
> Q. [(By DPA)] So, um, describe for the court what happens in that video.
>
> A. [(By Saunoa)] Um, I see the -- this person was in the car and then jumped out. Oh, hold on. That was -- in the video it was trying to get away I guess. I don't know. Moving the car forward. That's all I saw --
>
> Q. Okay.
>
> A. -- on the video itself.
>
> Q. Okay.
>
> A. Yeah.

---

[7](...continued)
> A. [(By Saunoa)] No. I was trying -- that person was trying to -- I went inside the house and when I came back out, the car was gone so I didn't see who drove away.

The above record does not indicate how the District Court ruled on the objection to the video, whether the District Court received the video into evidence, and whether the District Court viewed the video.[8]

Corporal Izuka testified that he responded to the Accident Scene for an MVC call and spoke to two witnesses[9] who came from nearby residences after hearing the crash. Corporal Izuka observed a hole in a "cinder block wall" of a building that belonged to "Shred-X." He saw damage to a "large flatbed trailer" parked in a "gravel lot" "13 feet away" from the "Shred-X building[,]" which was located "approximately 40 feet" from "the edge of the roadway[.]" He recovered a silver hubcap with a "Chevy logo" from the Accident Scene. He used his phone to record the video taken by Saunoa. Corporal Izuka did not testify as to the contents of the Saunoa video, but related that he created a diagram showing the vehicle's path of travel based on the video.

Officer Rezentes testified that he responded to the Accident Scene for an MVC call and observed "broken tile on the building," which he identified as "a Shred-X building or a business over there" on Moanalua Loop, by a "dirt lot" where the "workers park." A male[10] standing near the damage told him "a car just got stuck, wedged in there, and then a dark-colored person got out, jumped in the driver's seat, reversed out, and drove off." Officer Rezentes also watched the video recovered at the Accident Scene.

---

[8]    There is no indication in the remainder of the trial transcript that the video was received into evidence and viewed by the District Court. The court minutes, however, indicate that "[t]he court reviewed video on witness #1 [(Saunoa)] [sic] cell phone."

[9]    Corporal Izuka identified the two witnesses by their last name only, as "Saunoa" and "Snook."

[10]    Officer Rezentes did not identify this witness by name.

Officer DeGuzman testified that she responded to the Accident Scene for the MVC call and she "view[ed] the video that was provided by a witness" at the scene.

**Argument Scene testimony**

Approximately ten minutes after the police officers responded to the MVC call, they responded to a call about "a couple arguing fronting . . . 611 Kilinoe Street[,]" which was "less than two minutes away[.]"  At the Argument Scene, Officer Rezentes saw "two people," later identified as Amar and her wife, Angelique, on the sidewalk "walking away from" a parked "silver" car with "severe front end damage."[11]  The damaged vehicle appeared "similar" to the "silver four-door sedan" in the video that Officer Rezentes had previously watched at the Accident Scene.  Officer Rezentes testified that Amar was wearing the same clothes as the person in the video; he was able to identify Amar as the person in the video; and Amar was "driving away from the scene of the accident on the video[,]" as follows:

> Q. [(By DPA)] Okay.  Um, on the first scene there was a video recovered.  Did you watch that video?
>
> A. [(By Officer Rezentes)] Yes.
>
> Q. Okay.  And from that video were you able to positively identify Evelyn Madelyn [sic] [(Amar)]?
>
> A. Yes.
>
> . . . .
>
> Q. [(By DPA)] Okay.  And do you interact with Evelyn Madelyn [sic] [(Amar)] at that time?
>
> A. [(By Officer Rezentes)] Yes.

_____

[11]     Officer Rezentes testified as follows:

> Q. [(By DPA)] And could you describe, um, the scene when you arrived there.
>
> A. [(By Officer Rezentes)] Uh, we got sent to a couple arguing fronting the I think it was 611 Kilinoe Street.  When I pulled up, I seen [sic] a silver car parked on the right.  It looked like had [sic], um, severe front end damage.  And I observed two people on the sidewalk, like, walking away from the car, and that was Mrs. Amar and I believe it's her wife Angelique in the seat over there.

Q. And did you make any observations at that time?

A. She was wearing the exact same clothes as the person I saw in the video.

. . . .

Q. [(By defense counsel)] Can you describe for the court today the driving behavior or conduct by Madelyn Amar that suggested to you that she might be impaired?

A. [(By Officer Rezentes)] Her driving and conduct?

Q. That you personally observed.

A. I just seen [sic] her driving away from the scene of the accident on the video.

Officer Rezentes also testified that at the Argument Scene, he observed Amar had an "odor of alcoholic type beverage coming from her breath," and "red, watery eyes."

Corporal Izuka went to the Argument Scene with the hubcap he had recovered from the Accident Scene, to compare it to the damaged vehicle at the Argument Scene that was missing a hubcap. He photographed the hubcap alongside the damaged vehicle at the Argument Scene, and the photograph was admitted into evidence. Corporal Izuka stated the hubcap and the vehicle appeared to match.

Officer DeGuzman went to the Argument Scene after Officer Rezentes told her the occupants of the vehicle involved in the MVC were there, and that "one of the occupants was identified as the driver of the vehicle" from the MVC. At the Argument Scene, the officer administered a standard field sobriety test (**SFST**) on Amar, who had an odor of alcohol, red, glassy eyes, and slurred speech. The SFST was administered because Officer DeGuzman had "view[ed] the video that was provided by a witness" at the Accident Scene, and "[Amar] also appeared to . . . be the female that was identified as the driver on that incident prior."

At the conclusion of the trial, Amar's counsel argued Amar was not guilty because the "testimony of Rezentes and maybe one other witness" was not sufficient to establish "positive ID" of Amar as the person who operated the vehicle. In addition to

8

"contesting the issue of who's operating the vehicle[,]" Amar's counsel argued there was insufficient evidence of "impaired driving or conduct" because:

> [i]n order for somebody to be convicted of DUI, the government has to produce evidence tending to suggest that Madelyn Amar on the date and time at issue operated a motor vehicle in a manner tending to suggest she was impaired, couldn't care for herself and guard against casualty. That burden hasn't been met.

Amar's counsel argued that at the Argument Scene, "[n]obody is driving" and that "[a]t most[,] the facts in this case . . . support a finding or conclusion that, if anything, Madelyn Amar on the date and time at issue may be guilty of walking around in public while intoxicated."

The District Court found Amar guilty of OVUII as follows:

> THE COURT: Mr. [defense counsel], I disagree with you. I believe that the court [sic] has proved the identity of the driver that was involved in the motor vehicle collision as [Amar],[12] and the court is gonna [sic] find that given the totality of the circumstances, the extent of the injury -- uh, damages as well as the performance on the field sobriety test and the court is gonna [sic] find that [Amar] was operating the vehicle in a manner likely to not be able to guard against casualty or injury.
>
> So sentencing. [sic]

(Footnote added.)

---

[12]     The District Court did not specifically reference what evidence established identification of Amar as the driver involved in the MVC. In an earlier ruling on Amar's pre-trial "Motion to Dismiss Complaint for Lack of Probable Cause" that was consolidated with trial, however, the District Court expressly pointed to Officer Rezentes's testimony regarding the video as establishing identification:

> THE COURT: Okay. And based on Officer Rezentes' testimony that he observed the video and identified her as the same person in the video and that she was wearing the same clothes, the car had the same -- the matching damage and the hubcap was missing, the hubcap recovered at the scene was missing [sic], the court is going to deny the motion to suppress [sic].

The District Court erroneously referred to Amar's "Motion to Dismiss Complaint for Lack of Probable Cause" as a "motion to suppress" during its ruling.

### POE 1 - Inadmissible evidence of identification

Amar argues, among other things, that the District Court erroneously admitted Saunoa's video due to lack of foundation, and that the record on appeal does not contain the video. Amar argues that the police officer witnesses "who claimed to have identified Amar based on the video should have been precluded from so testifying." Amar asserts that "Saunoa, the only eyewitness to any part of the actual incident, was unable to positively identify the person driving the car[.]"

The trial court has discretion to determine whether a proper foundation is established for admission of evidence, and we will not disturb such a determination absent an abuse of discretion. State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d 1227, 1233 (2009). HRE Rule 901(a) requires "authentication or identification as a condition precedent to admissibility" and this standard is satisfied by a foundation "sufficient to support a finding that the matter in question is what its proponent claims."

Here, Saunoa's cell phone video was offered into evidence, but the record does not reflect whether or not it was received. The trial transcript does not reflect any ruling on the request to admit the video or the defense's HRE Rule 901 objection to the video's admission. Although the State asserts on appeal that a duplicate copy of the video Corporal Izuka made of Saunoa's cell phone video was received in evidence, the video is not listed as an exhibit in the record on appeal, which is required for consideration on appeal. See Hawaiʻi Rules of Appellate Procedure Rule 10 (requiring the record on appeal "consist of the trial court . . . record, as set out in Rule 4 of the Hawaiʻi Court Records Rules"); Hawaiʻi Court Records Rules (**HCRR**) Rule 4(c) (requiring the record of each case to include exhibits).[13] Thus, the record on appeal contains no video, which

---

[13] HCRR Rule 4, setting forth the content of court records, provides:

The record of each case, whether electronic, paper, or a combination thereof, shall include:

(continued...)

was the only evidence that purportedly provided the basis for the officers' identification of Amar as the operator of the vehicle when the MVC occurred.

The only evidence of identification of Amar as the driver of the vehicle when the MVC occurred is Officer Rezentes's and Officer DeGuzman's recollections of what they observed on the video. The officers were not eyewitnesses to, and had no personal knowledge of, the circumstances immediately after the MVC depicted in Saunoa's video. See HRE Rule 602 (prohibiting testimony by one who lacks personal knowledge). There was no required foundation laid through Saunoa, the only witness with personal knowledge, that the video was a fair and accurate depiction of the vehicle and its operator immediately after the MVC. See HRE Rule 901 (requiring authentication of evidence as a condition precedent to admissibility). Thus, allowing the officers' testimonies of what the video depicted, when no foundation was laid for the admission of the video, was an abuse of discretion. See Assaye, 121 Hawaiʻi at 210, 216 P.3d at 1233.

"[W]here a case is tried without a jury, it is presumed that the presiding judge will have disregarded the incompetent evidence and relied upon that which was competent." State v. Kiese, 126 Hawaiʻi 494, 507, 273 P.3d 1180, 1193 (2012) (citations omitted). On this record, however, where the District Court relied on Officer Rezentes's and/or Officer DeGuzman's

---

[13](...continued)
       (a) all documents related to the case, including correspondence, submitted for filing in any form;
       (b) any written jury instructions given or refused;
       (c) exhibits, including, but not limited to, presentence reports, social work reports, and tangible items, whether admitted into evidence or refused, provided that exhibits marked for identification but never offered shall not be included;
       (d) court reporters' notes, audio or video recordings of court proceedings, and any transcripts prepared from them;
       (e) a docket;
       (f) minutes; and
       (g) information contained in the electronic case management system . . . .

(Emphases added.)

inadmissible testimony regarding the video to establish identification of Amar as the driver of the vehicle when the MVC occurred, we conclude that Amar has rebutted the presumption. See id. The record thus lacks admissible evidence of identification of Amar as the driver of the vehicle involved in the MVC at the Accident Scene. See State v. Wallace, 80 Hawaiʻi 382, 413, 910 P.2d 695, 726 (1996)(requiring that review for evidentiary sufficiency be based on "*admissible* evidence[.]").

**POE 2 - Insufficient evidence of operation of the vehicle on a public way, street, road, or highway**

Amar also contends that "[t]he State presented insufficient evidence that Amar drove on a 'public way, street, road, or highway.'" Amar argues that since "the parking lot was **not** a public way, street, road, or highway" and "[s]ince Saunoa only witnessed driving in the parking lot, Amar cannot be convicted of OVUII."

When reviewing the sufficiency of evidence on appeal, the court applies the following deferential standard of review:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but *whether there was substantial evidence to support the conclusion of the trier of fact.*

State v. Kalaola, 124 Hawaiʻi 43, 56, 237 P.3d 1109, 1123 (2010) (citations omitted). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citation omitted).

The operation of the vehicle on a public way, street, road or highway is an essential element of the offense of OVUII. State v. Wheeler, 121 Hawaiʻi 383, 386, 219 P.2d 1170, 1174 (2009). To "'[o]perate' means to drive or assume actual physical control of a vehicle upon a public way, street, road, or highway . . . ." HRS § 291E-1 (2020).

12

Here, Saunoa, the only eyewitness from the Accident Scene who testified at trial, observed the vehicle "stuck" in the "Verizon" parking lot after the MVC. Saunoa testified that the vehicle did not drive onto the street and that "it stayed on the gravel." Corporal Izuka observed damage from the MVC to the "Shred-X" building wall, and to the trailer parked in the Shred-X "gravel lot." A parking lot for a business, whether Verizon or Shred-X, is not a "public way, street, road, or highway" under HRS § 291E-1. While witnesses testified that Moanalua Loop was a public street, no witness testified that they saw Amar operating the vehicle on Moanalua Loop at the Accident Scene. The officers' testimonies regarding what they observed on the video are inadmissible and cannot be considered in appellate review for evidentiary sufficiency. See Wallace, 80 Hawaiʻi at 413, 910 P.2d at 726. We conclude that even when viewing the evidence in the strongest light for the prosecution, the record does not contain substantial evidence that Amar operated the vehicle on a public way, street, road, or highway at the Accident Scene. See Kalaola, 124 Hawaiʻi at 56, 237 P.3d at 1123.

Therefore, IT IS HEREBY ORDERED that the February 5, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment and March 1, 2021 Notice of Entry of Judgment and/or Order and Plea/Judgment by the District Court of the First Circuit, ʻEwa Division are reversed.

DATED: Honolulu, Hawaiʻi, December 26, 2023.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge